UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Damien West, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | **COMPLAINT** |
| Union Pacific Railroad Co., | |
| Defendant. | |

Plaintiff Damien West ("West") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

## PARTIES

1. West is an individual who, during the events giving rise to his claims herein, resided in the City of Katy, County of Harris, Texas.

2. West was an employee of Union Pacific in its Houston Service Unit.

3. Union Pacific is a railroad carrier engaged in interstate commerce. It operates trains throughout Texas, and is headquartered in Omaha, Nebraska.

4. Defendant employs approximately 42,000 persons and runs more than 8,000 trains on over 30,000 miles of track all across the country west of Chicago and New Orleans.

5. Defendant employs approximately 7,315 people in Texas.

1

## JURISDICTION AND VENUE

6. West's claims arise under the ADA. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendant because Defendant maintains a significant business presence within the State of Texas, and because Defendant's acts and omissions giving rise to West's claim occurred in Texas.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Court has personal jurisdiction over Defendant, and because a substantial part of the events or omissions giving rise to West's claims occurred in this district.

## FACTUAL ALLEGATIONS

9. West was hired by Union Pacific on or around November 7, 2005 as a Conductor. He worked for Union Pacific as a Conductor until late 2016.

10. West was hired to work in Union Pacific's Houston Service Unit. As a Conductor, West was responsible for managing the movement of trains from one point to another within the Houston Service Unit.

11. West was a good Conductor for Union Pacific. He never had any safety issues or incidents during his time working for Union Pacific.

12. In late 2016, West was going through a difficult period in his personal life. He was in the process of getting divorced from his then-wife, and was emotionally distraught at the situation.

13. Further, West had been a victim of molestation as a child, and the emotional trauma from that experience was being dredged up by the emotional trauma from his divorce.

14. The holiday season was particularly difficult on West, because it was the first holidays in a decade that he was not spending with his wife.

15. Because of the personal hardship West was dealing with, on or about December 26, 2016, he called Union Pacific's Employee Assistance Program ("EAP") hotline to ask for help.

16. According to Union Pacific's website, the EAP "is a *confidential* program designed to assist employees and their family members with a variety of situations and personal problems" (emphasis added).

17. When West called the EAP, the person that answered the phone was unsympathetic to West's plight. Rather than offering help, the EAP representative asked West whether he was just calling to try to get out of work.

18. West's phone call with EAP left him feeling even more distraught. Within hours after the call, West cut himself with a box cutter. He immediately recognized the danger his emotional state was putting him in, and he drove himself to the emergency room, approximately an hour's drive away.

19. After West's physical injuries had been treated, a grief counselor at the hospital spoke with West about his emotional state. The counselor asked West whether he wanted to go to an inpatient facility to get help. West said that he would like to, but that he needed to get a leave of absence from his job at Union Pacific in order to do so.

20. The counselor at the hospital called Union Pacific's EAP hotline and requested a medical leave of absence on West's behalf. This time, EAP granted West a leave of absence.

21. West was then admitted to an inpatient treatment center, where he would

remain for three days.

22. After getting out of inpatient treatment, West continued treatment through outpatient therapy. During outpatient therapy, West was diagnosed by one of his treating physicians, Dr. Karen Hughes, with major depressive disorder.

23. By February or March of 2017, West's emotional state had substantially improved, so he contacted Union Pacific about going back to work. Union Pacific informed West that in order to begin the return to work process, he would need to send them all of his medical records from the inpatient treatment facility, including the notes his therapists made of his therapy sessions.

24. Because he wanted to get back to work, West provided the documents that Union Pacific requested.

25. After Union Pacific reviewed West's confidential therapy records, it imposed permanent work restrictions on him on or about April 28, 2017. These work restrictions precluded West from ever returning to his job as a Conductor for Union Pacific.

26. Union Pacific imposed these work restrictions because of West's diagnosed major depressive disorder.

27. Union Pacific imposed these work restrictions without ever speaking with West about his mental state, and without requesting any kind of medical examination or evaluation of West.

28. In June 2017, West's treating doctor provided a release for West to return to work without restrictions. West informed Union Pacific of his doctor's release, but Union Pacific still would not let him return to his job.

29. Another treating doctor released West to return to work, without restrictions, in February 2018. Again, Union Pacific was informed of the release, but still did not allow West to return to his job.

30. Since being forced from his job at Union Pacific, West has been hired as a Conductor for another major railroad.

31. West had to move from his home in Texas, and relocate to California, in order to accept his new Conductor job.

32. Union Pacific never offered any accommodation to West, and never engaged in an interactive process with West to determine whether any reasonable accommodation could be identified.

33. West timely filed a charge of discrimination with the EEOC, and timely brings the present lawsuit, for Union Pacific's violations of the ADA.

## CAUSES OF ACTION

### COUNT I
### DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADA

34. Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

35. At all relevant times, West was an individual with a disability under the ADA.

36. West is a qualified individual under the ADA.

37. Union Pacific discriminated against West on the basis of disability when it refused to allow him to return to his job following his approved medical leave of absence.

38. Because Union Pacific violated 42 U.S.C. § 12112, West has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. West is also entitled to attorneys' fees and costs incurred in connection with these claims.

39. Union Pacific committed the above-alleged acts with reckless or deliberate disregard for West's rights. As a result, West is entitled to punitive damages.

## COUNT II
## FAILURE TO ACCOMODATE, IN VIOLATION OF THE ADA

40. At all relevant times, West was an individual with a disability under the ADA.

41. Union Pacific was aware of West's disability.

42. Discriminating against a qualified individual with a disability includes:

> [N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 12112(b)(5)(A).

43. If Union Pacific believed that West's disability prevented him from performing any essential function of his job, it had a duty to explore whether a reasonable accommodation existed that would allow West to perform the essential functions of his job.

44. Union Pacific failed to engage with West in the interactive process, and failed to offer reasonable accommodation to West.

45. Because Union Pacific violated 42 U.S.C. § 12112, West has suffered and will continue to suffer loss of income, emotional distress, and other damages in an

amount to be determined by the trier of fact. West is also entitled to attorneys' fees and costs incurred in connection with these claims.

46. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for West's rights and safety. As a result, West is entitled to punitive damages.

## COUNT III
## IMPERMISSIBLE MEDICAL EXAMINTION, IN VIOLATION OF THE ADA

47. At all relevant times, West was an individual with a disability under the ADA.

48. Section 12112(d)(1) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including certain medical examinations and inquiries.

49. Section 12112(d)(4) of the ADA prohibits employers from "requir[ing] a medical examination and [from]. . . mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity"

50. Union Pacific discriminated against West on the basis of disability by making inquiry into West's private therapy records and other medical records, in violation of 42 U.S.C. § 12112(d)(4).

51. Because Union Pacific violated 42 U.S.C. § 12112, West has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. West is also entitled to attorneys' fees and costs incurred in connection with these claims.

52. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for West's rights and safety. As a result, West is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE, West prays for judgment against Union Pacific as follows:**

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

2. For an injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in an amount to be determined by the trier of fact;

4. For an award of pre-judgment interest, as provided by law;

5. For an award of West's costs, disbursements and attorneys' fees pursuant to law;

6. For all relief available under the ADA;

7. For such other and further relief available by statute; and

8. For such other and further relief as the Court deems just and equitable.

Dated: September 19, 2018

**THE MOODY LAW FIRM**

*s/ Nicholas D. Thompson*
Nicholas D. Thompson
nthompson@moodyrrlaw.com
500 Crawford Street, Suite 200
Portsmouth, VA 23704
(757) 673-9161 Work
(757) 477-0991 Cell
(757) 397-7257 Fax


JONES GRANGER LAW FIRM

_____
Marc A. Zito
TBA 22279400
mzit@jonesgranger.com
10,000 Memorial Drive, Suite 888
P.O. Box 4340
Houston, Texas 77210
(713) 668-0230
(713) 683-1289 Fax


**ATTORNEYS FOR PLAINTIFF**