UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAMIEN WEST, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-3340 |
| | § | |
| UNION PACIFIC RAILROAD COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Union Pacific Railroad Company's Motion for Summary Judgment. Dkt. 21. After reviewing the motion, the response, and the applicable law, the motion is **DENIED.**

### I. Background

The following facts are undisputed unless otherwise indicated. Defendant Union Pacific employed Plaintiff Damien West in 2005 to work as a train conductor. Dkt. 21-1 at 4. The conductor position is a safety sensitive position and is partially responsible for the operation of trains. Dkt 21-1 at 45. Conductors must be willing to work non-standard, unpredictable hours, including ten-to-twelve-hour shifts and two-to-five days away from home at a time. Dkt. 21-18 at 4.

Union Pacific asserts that West has a disciplinary record of several instances of absenteeism, as recently as June 2016, and two incidents related to his train operating: a derailment in 2008, and a collision in 2009. Dkt. 21-1 at 7–14. He testified that none of

1

these absences or incidents were related to drug use or psychiatric health issues (Dkt. 21-1 at 10–11, 14), and Union Pacific offers no direct evidence to the contrary.

West testified in deposition that during the late-December holiday season, 2016, he was subject to higher than average stress relating to a divorce and childhood trauma. Dkt. 21-1 at 17–19. On December 26, 2016, West had telephone contact with Union Pacific's Employee Assistance Program hotline three times. Dkt. 21-1 at 15. The character of those calls is disputed, but West indicated to the EAP that he was contemplating suicide. Dkt. 21-1 at 15–16. West testifies that after he contacted the EAP hotline, he cut his wrists with a box cutter, then drove himself to an emergency room in Lake Jackson, Texas. Dkt. 21-1 at 17–18. His wounds were bandaged, he was discharged, and he drove to the emergency room of a hospital in Houston to voluntarily check himself in for psychiatric treatment. *Id.*

The hospital tested West for illicit drugs, and found positive results for cocaine, opiates, and amphetamines. Dkt. 21-1 at 22–25. West testified in deposition that he had used cocaine in the two days before attempting suicide and used illicit opioids in the week before attempting suicide. *Id.* He testified in deposition that he was subject to being called to duty during those periods. Dkt. 21-1 at 25–26.

After three days at the hospital in Houston, West requested to leave and was discharged for treatment by outpatient health services. Dkt. 21-1 at 20–21. West's treating physician, Dr. Karen Hughes, completed a discharge summary. Dkt. 21-5. Dr. Hughes diagnosed West with major depression, cocaine use disorder (mild), and hypertension, and prescribed Wellbutrin and Trazodone, which are used to treat

depression. *Id.* at 3, 5. Dr. Hughes' discharge summary indicated that West's prognosis was "fair to good," assuming compliance with his treatment regimen, and that his condition on discharge was "[s]table, improved, not psychotic, not suicidal, not homicidal." *Id.* at 3, 6.

On discharge, West saw Dr. Hughes once a month, each session lasting between half an hour and an hour. Dkt. 21-1 at 27–28. He attended group therapy for about two weeks, which he testified he ceased because he "didn't need it." Dkt. 21-1 at 28.

Union Pacific placed West on unpaid medical leave after his suicide attempt. Dkt. 21-1 at 51. According to Union Pacific employee records, West reported he was "beginning to do better" starting around January 18, 2017. Dkt. 21-3 at 7. He sought to return to work as a conductor around the end of February, 2017. Dkt. 21-1 at 36. Union Pacific's Employee Assistance Program records indicate that the EAP notified Union Pacific's Health and Medical Services department that West was hospitalized relating to a suicide attempt and sought to return to work, prompting HMS to perform a "Fitness-for-Duty" evaluation of his capacity to safely operate a train. Dkt. 21-3 at 6–7.

At some point, Union Pacific obtained West's medical records relating to his hospitalization. Dkt. 21-3 at 6–7. The company's Chief Medical Officer, Dr. John P. Holland, issued a Fitness for Duty Determination Memo for West on April 18, 2017. Dkt. 21-6 at 2.

Dr. Holland has extensive experience as an occupational physician. Dkt. 21-8 at 13. He testified that he reviewed West's medical records from treatment with Dr. Hughes in reaching his conclusion. Dkt. 21-8 at 8. Dr. Holland's memo states that the Fitness for

3

Duty evaluation was initiated because Mr. West had been hospitalized for a suicide attempt from December 26–30, 2016, raising concerns for the safety of Mr. West and others. Dkt. 21-6 at 2. The report states that West was asked to provide medical records, but does not describe what medical records were reviewed in any further detail. *Id.* The memo states that West had lacerated his left arm with a box cutter and presented to an emergency room, and was admitted to the psychiatric unit. *Id.* It describes, in general terms, West's history of depression, which once required hospitalization in 2005, his treatment, and his alcohol, cocaine, and opiate use. *Id.* at 2–3. The report states that West "minimized" the laceration event and his drug use, and "reportedly had anger issues." *Id.* at 2.

Based on West's two known hospitalizations—in 2016 and 2005—Dr. Holland concluded that West's "underlying serious depression and substance abuse disorder appear to be chronic, dating back to 2005." *Id.* at 2. Dr. Holland found that it was "probable" that West's "depressive symptoms," "poor judgment," "substance abuse," and "self-destructive behavior" would "continue to recur in the future." *Id.* at 3. The "ongoing risk for recurrent severe psychiatric symptoms" and West's "risks for future suicide attempts," Dr. Holland found, "pose significant and imminent risks for substantial harm to Mr. West and others." *Id.* Dr. Holland found that these risks would be unpredictable and would not substantially diminish over time, and so should permanently bar West from work as a trainman or in any other safety-critical position on the railroad. *Id.*

Dr. Holland restricted West from operating company motor vehicles, mobile equipment, or on-rail equipment, from working with or around hazardous equipment such

as cranes, from climbing at unprotected heights, from working on or around moving trains, and from activities where decisions may pose an immediate safety threat to him or others, such as train dispatching. *Id.*

On June 5, 2017, West filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging disability discrimination. Dkt. 21-9.

According to Dr. Holland's deposition testimony, Union Pacific offered West assistance from vocational resource managers who might help West find a "non-safety critical role" that would not be precluded by the restrictions Dr. Holland placed on West's work. Dkt. 21-8 at 6. That process did not result in West obtaining a new non-safety critical position at Union Pacific. The reason for that result is in dispute. Union Pacific argues that West did not pursue the opportunity. Union Pacific records indicate that Pauline Weathorford reached out to West every one-to-two weeks between June and early September about vocational rehabilitation. Dkt. 21-11 at 9–11. West argues in his response to Union Pacific's motion that Union Pacific's vocational rehabilitation department told him that he could not hold any position with the company. Dkt. 22 at 4 (citing to deposition testimony that is not excerpted in any exhibit).

West appealed Union Pacific's FFD Determination through his union and under the terms of his union's collective bargaining agreement. Dkt. 21-1 at 43–44. Dr. Hughes saw West on February 20, 2018, and reported that West was able to return to work on February 27, 2018, with no restrictions. Dkt. 21-13. On June 1, 2018, Dr. Holland and Dr. Hughes spoke over the phone about West's prospective return to work. Dkt. 21-14 at 2–3, 21-4 at 11. Dr. Holland sent a letter to Dr. Hughes memorializing the conversation, which

stated that the two doctors agreed on West's diagnoses of major depressive disorder and cocaine use disorder. Dkt. 21-14 at 2. Dr. Holland found, under the terms of the collective bargaining agreement, that the lack of disagreement about West's diagnoses precluded a three-doctor panel review of West's condition. *Id.* at 2–3. Dr. Hughes later testified in deposition, among other things, that she disagreed with Dr. Holland about whether West could perform his job as a train conductor because West has a treatable condition and is getting treatment. Dkt. 21-4 at 14–15.

West appealed Dr. Holland's determination through his union, but that appeal did not result in a finding because West withdrew his request for a three-doctor panel before a final determination could be reached. Dkt. 21-15 at 2–3. He simultaneously resigned from Union Pacific because he had obtained employment with another Class 1 railroad company, and conflict-of-interest rules prohibited him from working for both companies. Dkt. 21-16, 21-17.

West testified that he stopped taking his medication when he moved to California in July 2018. Dkt. 21-1 at 36.

West filed this action under the Americans with Disabilities Act on September 19, 2018, alleging disability discrimination, failure to accommodate, and impermissible medical examination under the ADA. Dkt. 1. Union Pacific moved for summary judgment, arguing that West's disability discrimination claim and reasonable accommodation claim must be dismissed because his diagnoses and previous suicide attempt meant that he would constitute a direct threat if Union Pacific permitted him to

6

continue operating trains. Dkt. 21. Union Pacific also moves for summary judgment on West's claim for impermissible medical examination. Dkt. 21 at 20.

II. **Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celtic Marine Corp. v. James C Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014). A "genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549 (5th Cir. 2012). The moving party "has the burden of establishing that there is no genuine dispute of material fact." *Id.* at 550. To avoid summary judgment, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Id.* at 550. The non-moving party may "defeat the motion by showing a genuine dispute of material fact." *Johnston v. City of Houston*, 14 F.3d 1156, 1060 (5th Cir. 1994). "'[A]11 facts and evidence must be taken in the light most favorable to the non-movant.'" *Davis-Lynch, Inc.*, 667 F.3d. at 549-50. However, "[u]nsworn pleadings, memoranda, or the like are not . . . competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991); *see also Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991) ("[O]nly evidence—not argument, not facts in the complaint—will satisfy [the nonmovant's] burden.").

### III. Union Pacific's Direct Threat Defense

Union Pacific argues it individually assessed West's ability to perform his job safely, because Dr. Holland reviewed West's medical records, spoke to West's treating physician, Dr. Hughes, and applied his thirty years of experience as an occupational physician and his extensive knowledge of West's role as a conductor to determine whether West was capable of safely performing his job duties. Dkt. 21 at 16–19.

West argues Union Pacific's assessment was not individualized because (1) Dr. Holland issued the same restrictions against West that he has issued against every other employee who has attempted suicide without first speaking with West or West's psychiatrist, and (2) Dr. Holland's restrictions are permanent, disregarding the possibility of rehabilitation through treatment. Dtk. 22 at 12 – 15. West also argues Union Pacific did not rely on the most current medical knowledge and/or the best available objective evidence. *Id.* He points out that his treating psychiatrist and an independent expert came to a different conclusion from Union Pacific about West's capacity to return to work, and that West now works for a Union Pacific competitor, without incident. *Id.* at 12–13.

#### A. Direct Threat Standard

An employer is entitled to an affirmative defense of "direct threat" if an employee poses a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019) (quoting 42 U.S.C. § 12111(3)); *see also* 42 U.S.C. § 12113(b). Whether an employer has properly determined that a person poses a direct threat depends on "the objective reasonableness of [the employer's] actions." *Nall*, 917 F.3d at 342 (quoting *Bragdon v.*

8

*Abbott*, 524 U.S. 624, 650 (1998) ("[C]ourts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments[.]")). "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job.'" *Nall*, 917 F.3d at 342 (quoting *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86 (2002)); *see also EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 731 (5th Cir. 2007) ("The employer must make an 'individualized assessment of the individual's present ability to safely perform the essential function of the job.'" (citations omitted)).

The Fifth Circuit has "declined to reach the question of which party bears the burden of establishing that an individual's disability poses a direct health or safety threat to the disabled employee or others." *Nall*, 917 F.3d at 343, n. 5. In reaching its conclusion, this Court assumes it is West's burden to show that Union Pacific improperly determined West to pose a direct threat.

### B. Analysis

On the narrow issue of direct threat on which Union Pacific moves for summary judgment, and viewing the evidence in the light most favorable to West, the Court concludes that a reasonable jury could conclude that Union Pacific did not consider the "best available objective evidence" or meaningfully engage in an "individualized assessment" of whether West could perform the essential duties of his job safely—and

9

that, as a result, Union Pacific's direct threat determination was not objectively reasonable.

"[A]n employer's direct threat determination must result from an 'individualized assessment' of the particular employee based on the 'best available objective evidence,' not a categorical conclusion that an employee with a particular disability cannot safely perform a job." *Nall*, 917 F.3d at 344. With regard to individuals with psychiatric disabilities, "the employer must identify the specific behavior that would pose a direct threat. An individual does not pose a 'direct threat' simply by virtue of having a history of psychiatric disability or being treated for a psychiatric disability." EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities (March 25, 1997) (https://www.eeoc.gov/policy/docs/psych.html) (cited in, e.g., *Wolski v. City of Erie*, 900 F. Supp. 2d 553, 559 (W.D. Pa. 2012)). In the case of an individual who has attempted suicide,

> [a]s with other questions of direct threat, an employer must base its determination on an individualized assessment of the person's ability to safely perform job functions when s/he returns to work. Attempting suicide does not mean that an individual poses an imminent risk of harm to him/herself when s/he returns to work. In analyzing direct threat (including the likelihood and imminence of any potential harm), the employer must seek reasonable medical judgments relying on the most current medical knowledge and/or the best available factual evidence concerning the employee.

*Id.*

Union Pacific relies on the fact that West has attempted suicide and suffered, and continues to suffer, from severe, recurrent major depressive disorder. Dkt. 21 at 17.

Union Pacific cites Dr. Holland's deposition testimony that West has a "higher likelihood of [attempting] suicide again than a person who has not previously [attempted] suicide." Dkt. 21 at 17 (citing Dkt. 21-8 (excerpts from Dr. Holland Dep.) at 11–12). Dr. Holland does not cite medical research or any other basis for this conclusion. Asked whether he was aware of any medical literature that demonstrates that people who have attempted suicide present an unacceptable safety risk in the workplace, Dr. Holland cited reports of commercial airplane crashes attributable to probable suicide attempts by flight crew. Dkt. 21-8 at 12. Asked whether he was aware of any medical literature supporting his opinion that an employee who attempts suicide presents an unacceptable safety risk in the workplace, Dr. Holland said he had not looked at that issue specifically. *Id.* While his conclusion is presumably based on his experience and expertise, his otherwise unsubstantiated assertion is not enough to warrant summary judgment. Neither a history of psychiatric disability nor attempting suicide constitute *per se* bases for finding that an employee poses a direct threat. *See Nall*, 917 F.3d at 344 (stating that employer's direct threat conclusion must not result from "a categorical conclusion that an employee with a particular disability cannot safely perform a job").

Dr. Hughes, a psychiatrist with special training relating to suicide risk, also disagreed with Dr. Holland's conclusion that West could not perform safety-sensitive work. Union Pacific argues that Dr. Hughes' opinion is insufficient to show that Union Pacific's conclusion is unreasonable, essentially because she could only recall one of West's job duties in deposition and because she was unaware that he was no longer

11

receiving treatment.[1] Dkt. 21 at 17–18. But Dr. Hughes also testified that she reviewed West's duties as a conductor in detail with Dr. Holland. Dkt. 21-4 at 10. And as discussed below, the fact that West was no longer receiving treatment in 2018 is not necessarily dispositive of the reasonableness of Union Pacific's opinion in 2017.

Union Pacific argues that disagreement by another physician is insufficient to overcome summary judgment. Dkt. 21 at 18. But considering the slender reed on which Dr. Holland's opinion rests, and Dr. Hughes's contrary opinion as a practicing psychiatrist, the Court finds that West has raised a fact issue regarding the objective reasonableness of Dr. Holland's opinions. *See Nall*, 917 F.3d at 345 ("Even if it is true that BNSF could choose to credit the opinions of its own doctors over Nall's, the evidence identified by Nall puts into question the objective reasonableness of those opinions.").

Union Pacific also points to the fact that West "used illegal drugs, has a history of misusing illegal drugs, and even suffered from '[c]ocaine use disorder, mild.'" Dkt. 21 at 17. The Court finds that Union Pacific has not demonstrated that there is no genuine issue of material fact whether Dr. Holland's conclusion that West suffered from cocaine use disorder was an individualized, reasonable assessment based upon current medical knowledge and/or the best available evidence. Dr. Holland testified that in his professional medical opinion, using methamphetamine and cocaine together "suggest[s]

---

[1] Union Pacific also points out that Dr. Hughes testified in deposition that she could not guarantee that West would not attempt suicide again and that West could injure others if he attempted suicide while operating a train. Both statements are obvious and true of any patient regardless of history. They are not dispositive of the reasonableness of Union Pacific's conclusion.

that there's more than just a one-time use." Dkt. 21 at 9 (citing Dkt. 21-8 (excerpts from Dr. Holland Dep.) at 8). West testified that he had only used illegal drugs during this one episode, in the days immediately preceding his suicide attempt. There is a genuine fact issue about the frequency and duration of West's drug use.

Union Pacific cites other evidence that a jury may find irrelevant to the direct threat issue. Union Pacific argues that West constitutes a direct threat in part because he "has stopped taking his medication," "has ceased going to therapy," and "has ceased seeking medical treatment," all "against his treating physician's advice." Dkt. 21 at 17. Nowhere in Dr. Holland's fitness-for-duty determination memo on April 18, 2017, his letter to Dr. Hughes on June 18, 2018, or his deposition testimony does Dr. Holland indicate that West's failure to continue treatment formed a basis for Dr. Holland's conclusion that West poses a direct threat. Those alleged failures to continue treatment occurred in 2018, which a jury could find irrelevant to the reasonableness of a fitness-for-duty determination in April 2017. Accordingly, the Court does not consider them dispositive on the direct-threat issue. *See Equal Employment Opportunity Comm'n v. McLeod Health, Inc.*, 914 F.3d 876, 882 (4th Cir. 2019) ("An employer's reasonable belief" that an employee, due to a medical condition, cannot perform an essential job function or cannot do so without posing a direct threat, "must be based on objective evidence obtained, or reasonably available to the employer, *prior to* making a disability-related inquiry or requiring a medical examination.") (emphasis supplied by Fourth Circuit).

Likewise, a jury may find that Union Pacific's assertions about West's poor safety record prior to his suicide attempt are irrelevant to the narrow issue presented for summary judgment. Union Pacific argues that West could not safely perform his duties as a train conductor because he was at higher risk to attempt suicide or have a depressive episode while operating a train. *See, e.g.*, Dkt. 21 at 1. Union Pacific presents no evidence at this stage tying West's prior disciplinary events to the psychiatric conditions that it now says make West a direct threat.

Accordingly, Union Pacific's motion for summary judgment on West's disability discrimination claim based on the direct threat defense is denied. Union Pacific argues that West's failure to accommodate claim fails based on the direct threat defense as well. Based on the foregoing, the Court denies summary judgment on West's failure to accommodate claim.

## IV. West's Impermissible Medical Examination Claim

The Court denies Union Pacific's motion for summary judgment on West's claim for impermissible medical examination. Dkt. 21 at 21–23.

The ADA provides that an employer "shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such . . . inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

Union Pacific argues that West has not administratively exhausted his claim for impermissible medical examination. The Court finds that this claim is exhausted. West's Charge of Discrimination to the Texas Workforce Commission and the EEOC states that

he "was told that [he] can't do [his] job because of what [his] medical provider reported to them." This complaint raises allegations similar enough to those raised in his federal complaint that they satisfy the concerns underlying the administrative exhaustion requirement. *See, e.g., McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (stating that EEOC complaints should be construed "broadly but in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination").

As to the merits of the claim, Union Pacific's motion for summary judgment is denied because the record reveals genuine issues of fact as to what evidence Union Pacific faced about West's capacity to work when requesting West's medical records, and whether that evidence would cause a reasonable person to inquire into West's capacity to perform his job. *See Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010) (holding that business exception applies before employee's work performance declines if the employer is faced with "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job").

V. **Conclusion**

For the foregoing reasons, Union Pacific's motion (Dkt. 21) is **DENIED**.

SIGNED this day 24th day of March, 2020.

_____
George C. Hanks Jr.
United States District Judge